UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CRYSTAL EMPLOYMENT SERVICES LLC,

        Plaintiff,

v.

LODIGE USA, INC.,

        Defendant.

_____/

Case No. 24-cv-12021

Hon. Mark A. Goldsmith

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS (Dkt. 18) AND (2) DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT (Dkt. 20)**

Plaintiff Crystal Employment Services LLC, (CES) filed a lawsuit against Defendant Lodige USA, Inc. (Lodige) for declaratory relief and quantum meruit based on alleged mutual mistake in the formation of the agreement between the parties. See First Am. Compl. ¶¶ 44, 48 (Dkt. 8). Before the Court are two motions: (i) Lodige's motion to compel arbitration and stay proceedings (Dkt. 18) and (ii) CES's motion for leave to file second amended complaint (Dkt. 20). For the reasons that follow, the Court grants Lodige's motion to compel arbitration and denies CES's motion to amend.[1]

### I.    BACKGROUND

Lodige and CES agreed that CES would supply labor for Lodige's project installing material handling equipment at the Travis Air Force Base in Fairfield, California. First Am. Compl. ¶¶11–14. After CES began performance, a U.S. Department of Labor audit found that

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). The briefing also includes CES's response to Lodige's motion (Dkt. 25), Lodige's Reply (Dkt. 26), and Lodige's response to CES's motion (Dkt. 22).

CES's laborers were not properly classified and were underpaid, in violation of federal wage guidelines. Id. at ¶ 29; Mot. at PageID.118; Resp. at PageID.294–294. The audit's findings lead to a dispute between Lodige and CES as to which party was liable for the underpayment. First Am. Compl. at ¶ 39; Mot. at PageID.118; Resp. at PageID.294. CES filed this action, seeking rescission of the agreement based on mutual mistake, and seeking payment from Lodige for CES's outstanding invoice. First Am. Compl. ¶¶ 44, 48. The agreement contained an arbitration clause, which Lodige now seeks to enforce. Mot. at PageID.123.

The parties agree on many aspects of their agreement, which they characterize as a "sub-contract." The parties agree that the sub-contract was executed by both parties. Id. at PageID.116; First Am. Compl. Exhibit B at PageID.82. The parties also agree that the sub-contract contained an arbitration provision in a sub-section called "Settlement of Disputes." First Am. Compl. ¶ 22; Mot. at PageID.117–118. The Settlement of Disputes provision states:

> If any dispute or difference of any kind whatsoever shall arise between the Contractor and the Subcontractor out of or in connection with the sub-contract or the carrying out of the sub-contract works, the parties will attempt in good faith to settle it by negotiation between senior representatives of the parties duly appointed by each party, over a period of fourteen (14) days.

Id. The provision then sets forth the details of arbitration:

> Unless settled under the above standing [sic] sub-clause any dispute or difference of any kind whatsoever shall be finally settled by arbitration unless otherwise agreed by both Parties:
>
> The dispute or difference shall be finally settled under the Rules of Arbitration of the International Chamber of Commerce (ICC) [.]
>
> The dispute or difference shall be finally settled by a single arbitrator. In the absence of agreement, the arbitrator shall be designated by the ICC Court of Arbitration.
>
> The arbitration shall be conducted in the English Language.

>Any hearing, session or meeting in connection with the arbitration shall be held in The Hague, the Netherlands.

Id.

The parties disagree, however, about how this provision applies. CES resists arbitration because it challenges the contract based on a mistake theory and on unconscionability grounds—all of which, it argues, must be evaluated by the Court. Resp. at PageID.296–301. Lodige contends that all of these issues are for the arbitrator to decide. Mot. at PageID.121–123. As explained below, CES is wrong in arguing that the Court must decide the mistake issue. And while the Court can resolve CES's second argument about unconscionability, CES's arguments fail on the merits. Thus, the Court must send this dispute to arbitration, where CES's proposed second amended complaint (including any new claims) can be adjudicated.[2]

## II. ANALYSIS

Under the Federal Arbitration Act (FAA), courts must enforce valid arbitration agreements. See 9 U.S.C. § 2. A defendant may invoke arbitration by (i) requesting a stay of the proceedings under 9 U.S.C. § 3 while "any issue referable to arbitration under [the] agreement" is arbitrated, or (ii) moving under 9 U.S.C. § 4 for an "order directing that such arbitration proceed in the manner provided for in [the arbitration] agreement." Id.

The insertion of an arbitration clause in a contract does not necessarily mean that all disputes between the parties in connection with the contract will be resolved through arbitration. Caselaw establishes that where a party claims some legal defect with the arbitration provision itself—as distinct from an attack on the contract as a whole—the issue targeting the arbitration

---

[2] CES makes a threshold argument that arbitration is not mandatory under the contract. Resp. at PageID.304. But the language of the provision—"[t]he dispute or difference shall be finally settled by a single arbitrator"—is clear and cannot reasonably be read any other way.

clause must be decided by the court. Attacks that are not directed to the arbitration clause itself are resolved by arbitration, unless the challenge is to the "formation" of a contract—a term that has been narrowly interpreted and does not embrace the defense of mistake. These principles are illustrated in the following cases.

In Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395 (1967), the Supreme Court held that a challenge to a contract "generally"—such as fraud in the inducement of the entire contract—is a matter for the arbitrators to decide, not the court. Id. at 403–404. On the other hand, an attack on the arbitration clause itself—such as a claim that the clause itself was induced by fraud—would be within the court's province to adjudicate. Id.

The Sixth Circuit followed this same principle in Masco Corp. v. Zurich Am. Ins. Co., 382 F.3d 624 (6th Cir. 2004), holding that a defense of mutual mistake—which was asserted in that case as an attack on the entire contract, rather than on the agreement to arbitrate in particular—must be resolved by the arbitrator:

> [T]he [mutual mistake] argument still amounts to an attack on the underlying liability, and only derivatively on the obligation to arbitrate. Therefore, under Prima Paint, the general arbitration provision still applies. The existence of a mutual mistake leads at most to the conclusion that the underlying contract obligation was voidable, or subject to rescission… In a similar situation, where the party objecting to arbitration claimed that the entire contract was fraudulently induced, the Supreme Court in Prima Paint nonetheless required arbitration where the fraudulent inducement did not relate specifically to the arbitration clause. The Court reasoned that a court may consider only claims concerning the validity of the arbitration clause itself, as opposed to challenges to the validity of the contract as a whole, in determining whether a valid agreement to arbitrate exists. Prima Paint, 388 U.S. at 402–06…The reasoning clearly extends beyond the fraudulent inducement context to cases involving other bases for rescinding a contract in toto.

Id. at 629.

4

While a challenge based on the "formation" of a contract is resolved by a court, "formation" does not include a substantive defense to a contract, such as mistake, as explained in Lusk v. Regions Bank, No. 4:22-CV-00059, 2023 WL 11979494, at *3 (E.D. Tenn. Feb. 27, 2023):

> In accord with the required balancing of state-law defenses with Congress' prioritization of arbitration, the Sixth Circuit has taken an almost literal approach to formation questions. Recent law indicates that motions to compel arbitration should not be denied on formation or existence grounds unless there is a 'total absence of any expressed intent to arbitrate contractual issues.' Masco, 382 F.3d at 630 n.2. Generally, these limited instances involve 'questions of signatory power, not contract content.' Burden v. Check Into Cash of Ky., LLC, 267 F.3d 483, 489 (6th Cir. 2001) (citations omitted). For example, situations where "the signor did not sign the contract, was an agent without authority to bind his principal, or lacked the mental capacity to assent." Moran v. Svete, 366 F.App'x. 624, 632 (6th Cir. 2010). The Sixth Circuit also has affirmed a denial of a motion to compel where one party's promise to arbitrate was illusory—thus, not a promise to arbitrate at all. Day v. Fortune Hi-Tech Mktg., Inc., 536 F.App'x. 600, 604 (6th Cir. 2013).

This caselaw dooms CES's contention that this Court should decide the mutual mistake issue. Resp. at PageID.298–299. CES's mutual mistake argument attacks the underlying contract "generally"—not the arbitration clause specifically. Id. CES's argument that a court should decide the mistake issue was the position asserted in Masco by the dissenting judge. Masco, 382 F.3d at 630 (Martin, J., dissenting). Given that this position was not accepted by the majority on the panel, this Court is not free to adopt the losing view. CES's mutual mistake challenge must be resolved by the arbitrator.

CES's invocation of In re StockX Customer Data Sec. Breach Litig., 19 F.4th 873 (6th Cir. 2021), is similarly misguided. There, the court explained that a court resolves any challenge to the "formation or existence" of the agreement. Id. at 879. If the court finds that a contract exists, then any challenge not specifically targeting the arbitration clause must be resolved by the arbitrator. Id. at 880. This "severability" principle deems an arbitration provision effective once a contract is formed, unless there is a specific defect in the arbitration clause itself. Id.

5

However, nothing in In re StockX suggests that a claim of mutual mistake negates the formation of a contract. Any such contention would be inconsistent with Masco, which In re StockX cited without any criticism. Id. at 885 (explaining that Masco held that an arbitration clause is enforceable even if the clause is contained in a voidable contract).

To the extent CES is arguing that its mutual mistake argument is directed at both the contract generally and the arbitration clause as well, the Court need not accept CES's naked assertion to that effect. In re StockX, 19 F.4th at 885 ("[A] party's mere statement that it is challenging the delegation provision is not enough; courts must look to the substance of the challenge."). The challenge to the arbitration clause must be "directed specifically to the agreement to arbitrate before the court will intervene." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 71 (2010). CES's mutual mistake argument focuses on an alleged mistake regarding the classification and pay rates for workers. Resp. at PageID.298. There is no claim that the parties were mutually mistaken about the arbitration clause. Therefore, the mutual mistake issue must be resolved by arbitration.

By contrast to its mistake argument, CES's unconscionability challenge may be viewed as targeted at the arbitration clause, an issue that can be resolved by the Court. However, as explained below, CES's unconscionability arguments fail because they lack legal merit.

CES makes two arguments regarding unconscionability: (i) the clause is buried in the agreement, and thus CES had no opportunity to bargain over the arbitration terms; and (ii) the clause forces the parties to arbitrate subject to the ICC's "oppressive" rules. Resp. at PageID.296–298. The Court finds these arguments unpersuasive because they are conclusory and devoid of legal support. Id.

As to CES's first argument, there are no facts in CES's complaint and response brief about the arbitration provision being buried in the sub-contract or the lack of an opportunity to bargain over that provision. Nor does CES provide, by affidavit or otherwise, any facts or evidence supporting its contention.

Aside from the lack of factual support, there is also no legal support for CES's position. Michigan law does not provide relief for a party who has failed to read a contract, in the absence of fraud or deception. Moffit v. Sederlund, 378 N.W.2d 491, 496 (Mich. Ct. App. 1985); see also Draeger v. Kent County Sa. Ass'n, 219 N.W. 637, 638 (Mich. 1928) ("To allow persons of intelligence and mature age to repudiate their written contracts, which they have an opportunity to read before signing and can read, would lend uncertainty to business transactions and render the making of contracts unsafe."). And CES's argument that it lacked the opportunity to bargain is of no legal significance, given that the "standardized and preprinted" nature of a contract does not make it unenforceable. Beaver v. Figgie Int'l Corp., No. 87-1362, 1988 WL 64710 at *4 (6th Cir. June 24, 1988) (unpublished) (citing St. Paul Fire & Marine Ins. Co. v. Guardian Alarm Co., 320 N.W.2d 244, 247 (Mich. Ct. App. 1982)). Therefore, the Court finds this first argument without any merit.

CES contends in its second argument that the arbitration clause is "oppressive" because the ICC requires the parties to arbitrate under "complex, non-domestic rules," which is unfair for a "small" U.S. company, and would interfere with a related administrative proceeding. Resp. at PageID.297. This argument is also entirely unsupported. CES offers no explanation of how the rules are "complex," why they would be "oppressive," or how there would be any "interference." Nor is there any substantiation of how "small" CES is and how that size unfairly prejudices it.

7

This Court need not evaluate an argument that CES fails to develop. See ECIMOS, LLC v. Nortek Glob. HVAC, LLC, 736 F. App'x 577, 583–584 (6th Cir. 2019) ("[T]his court has consistently declined to review issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (punctuation modified). And the Supreme Court has specifically rejected similar challenges to arbitration clauses based on allegedly prohibitive costs that were not substantiated. Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92 (2000) ("[W]here, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."). Therefore, CES's second argument fails, too.[3]

### III. CONCLUSION

For the foregoing reasons, the Court grants Lodige's motion to compel arbitration and stay proceedings (Dkt. 18). The Court also denies CES's motion to file a second amended complaint (Dkt. 20). Whatever amended claim CES wishes to pursue can be addressed within the arbitration.

A status conference will be convened to discuss staying the case and proceeding to arbitration.

**SO ORDERED.**

Dated: July 10, 2025     s/Mark A. Goldsmith
Detroit, Michigan        MARK A. GOLDSMITH
                         United States District Judge

---

[3] CES also claims that the arbitration provision is akin to a forum selection clause, which may be attacked as "unreasonable and unjust" or "invalid for such reasons as fraud or overreaching." Resp. at PageID.300. This argument too suffers from lack of factual and legal support, as CES does not delineate anything that would reasonably fit into these categories.

## **CERTIFICATE OF SERVICE**

      The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 10, 2025.

                                                s/Joseph Heacox
                                                JOSEPH HEACOX
                                                Case Manager